FRANK B. LIENEMANN ET AL., APPELLANTS, IMPLEADED WITH GEORGE LIENEMANN, APPELLEE, V. HERMAN LIENEMANN ET AL., APPELLANTS, IMPLEADED WITH ROSE LIENEMANN ET AL., APPELLEES.

268 N. W. 2d 108

Filed July 19, 1978. No. 41851.

Dixon G. Adams, for appellants Frank Lienemann et al.

Jeffrey B. Farnham, for appellants Herman Lienemann et al.

L. J. Tierney and T. J. Stouffer of Cassem, Tierney, Adams, Gotch & Douglas, for appellee George Lienemann.

E. Dean Hascall, referee, pro se.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

WHITE, C. THOMAS, J.

This is the second appearance of this case before this court. In Lienemann v. Lienemann, 197 Neb. 449, 249 N. W. 2d 902, this court held that the District Court for Sarpy County was without jurisdiction after final adjournment of a term to vacate its original order.

The original order determined that a trust had been terminated, directed partition, and appointed a referee. A mandate was issued directing the District Court for Sarpy County to proceed in accordance with the opinion.

A sale previously having been held and confirmed and no objection having been made to the terms of, or the price received at, the sale, there remained a number of matters for the District Court to determine. They are as follows: (1) The application of plaintiff-appellee George Lienemann for reimbursement for improvements allegedly made to the sub-

ject land during the time of his occupancy; (2) the application of the defendant-appellant Herman Lienemann for an accounting of rents allegedly due from the persons who had occupied the premises, Frank and George Lienemann; (3) the application of plaintiff-appellant Frank Lienemann requesting reimbursement for money paid to obtain an abstract of the property; and (4) the applications of the referee for fees and of defendant-appellant Herman Lienemann for attorney's fees in the partition action. We shall discuss the matters in reverse order.

The District Judge, over objection, proceeded to take extended evidence, much of it in response to subpoenas issued on his own motion and subject to examination conducted by the judge himself. With respect to the precise issue previously determined finally in Lienemann v. Lienemann, *supra,* i.e., whether the trust had terminated in 1968, the judge apparently sought to point out to this court the error in its previous determination. Apparently the District Court concluded that the subject of the dissolution of the trust was still an open question. It was not. Objections to all such evidence were proper and should have been sustained.

The Lienemann land was sold at the sale for $740,000. In the proceeding for the allowance of fees, the District Judge allowed the attorney for the plaintiffs $1.01 and the referee, a fee of $30,000. Section 25-21,108, R. R. S. 1943, provides in part: "If, in the proceedings in partition, judgment shall be entered directing partition, * * * the court shall, after partition or after the confirmation of the sale and the conveyance by the referee, determine a reasonable amount of fees to be awarded to the attorneys of record in the proceedings, which amount shall be taxed as costs in the proceedings. * * * The court shall also determine and tax as costs a reasonable fee for the referee." The record discloses that the estimates of the customary fees received by attor-

neys in the judicial district of which Sarpy County is a part, including some allowed by the presiding judge himself, are in the range of 6 percent to 7½ percent of the total sale. Generally, two-thirds of this amount goes to the attorney of record and one-third to the referee. The fee allowed to the referee in this case is approximately 4 percent of the total sale price.

It is obvious from a reading of the record that the trial court was of the opinion that the attorney for the plaintiffs had somehow breached his duty in one or more of the following respects: (1) In failing to conclude that the trust was somehow still in existence and in bringing the partition action in the first place; (2) in failing to advise all the beneficiaries of the trust that there was an alternative to a sale by auction; and (3) in agreeing with the attorney for one of the parties, also an appellant in this case, that he would receive 30 percent of any fee allowed plaintiffs' attorney subject to the approval of the court.

It will be necessary for the resolution of all the issues to have some background. The father of the parties in this case, August Lienemann, was the original owner of the subject land. George Lienemann occupied the farm in March 1950 at his father's request. He occupied the farm continuously from 1950 to April 1976. George and Frank farmed the land as tenants of August Lienemann until the establishment of a trust on March 2, 1963. The trust existed from March 2, 1963, until it terminated by its own terms on March 2, 1968. The land was conveyed to Frank Lienemann as trustee for the use and benefit of himself and his four brothers and a sister. The trust provided that George and Frank were to continue to farm the land on the same basis as previously; George and Frank received three-fifths share of the profits while the remaining two-fifths share went to August, and later to the trust. The partition action was commenced when one of

the Lienemann children, Herman, decided he wanted to sell his share of the land. The remaining children sought to retain the land as a whole. This resulted in a partition action being filed against Herman. The improvements, of a value of $25,000, for which George seeks recovery, were largely, if not exclusively, made during the period of his tenancy as distinguished from his period of ownership. The improvements consisted of the erection of buildings, planting of shelter belts, and extended improvements to the dwelling house on the premises which he occupied for 26 years without charge for rent. The only evidence with respect to compensation therefor was that given by George himself who quotes his father August as saying: "Go ahead if you want to. It will all be yours, anyway, someday." According to the terms of the lease, George was never charged for rent, nor were he and Frank charged for any rent for use of certain pasture land on the premises or for the use of the cornstalks for grazing cattle after harvest. It is not contended that payment for either the use of the premises or of the dwelling house and the farm buildings or for the use of the pasture and cornstalks were ever contemplated in the original occupancy of George and Frank while the land was under their father's ownership, nor is there any evidence of any subsequent agreement in which any such conditions were imposed. It is settled law in Nebraska that improvements made while a party is in possession of premises under a lease which does not grant the right of reimbursement are not reimbursable to him. See, Smith v. Kober, 108 Neb. 768, 189 N. W. 377; Blomquist v. Board of Educational Lands & Funds, 170 Neb. 741, 104 N. W. 2d 264. The general rule that improvements which become a part of the real estate may not be removed and do not become the property of the lessee is applicable in the absence of agreement, express or implied, or a statute indicating

otherwise. See State v. Bardsley, 185 Neb. 629, 177 N. W. 2d 599.

Counsel for the plaintiff-appellee George acknowledges the rule cited above but nevertheless urges us to follow the principle announced in Atkins v. Schmid, 129 S. W. 2d 412 (Tex. Civ. App., 1939). In that case the son entered in possession of a mother's real estate, made valuable improvements thereon, and occupied the same for himself and his family. The Texas court held: "* * * since the mother owned the land throughout, and allowed W. H. Atkins to establish his home thereon, and, at her death, he, having acquired an interest in her estate as a co-tenant in the whole, was, we think, clothed with the right, when the time for partition came, to have allotted to him in the division, the particular portion of the land improved by him and claimed as his home." We decline to do so in this case.

The improvements erected on the premises were primarily for the benefit of the occupants themselves. They were not made under any claim of compensation. Obviously the lease terms were under favorable consideration since the evidence indicated that, as pointed out above, substantial amounts of pasturage were reserved rent-free to the tenants. No rental was charged on the occupancy of the dwelling house or the use of the forage after harvest. We acknowledge that in a particular case equitable principles might require us to make allowances for improvements made by a tenant during the term of his lease in contemplation of his status as a prospective heir when he does not inherit the property and is not compensated in a partition action, viz., the other heirs. This is not such a case.

Defendant-appellant Herman further suggests that the beneficiaries of the trust are entitled to an accounting from the trustee and from the occupiers George and Frank for the reasonable value of the cornstalks, the value of the home and farmstead oc-

cupied, and for the value of pasture for which they were not charged rent as tenants. This contention has no merit. As pointed out above, there was no agreement providing that George and Frank pay such rent. The fact of the nonpayment of rent for the three items mentioned above was well known to each and every one of the beneficiaries of the trust. It was a continuation of a relationship between August and his sons-tenants and, as such, was acceded to by the parties. Each and every year a full and complete accounting of the total rentals was made by the trustee and a distribution made by the trustee to the beneficiaries; the checks were accepted and cashed, and no protests were made with respect to the lease arrangement. The defendant-appellant Herman is in no position to now question the arrangements to which he voluntarily acceded.

The defendant-appellant Herman complains of the allowance by the trial court of a reimbursement to Frank, an appellant, for reimbursement in the amount of $5,000 to an attorney, John Samson. Samson had demanded the sum as a prerequisite to relinquishing the abstract of the land. There was no obligation. Frank did not consult the other parties prior to paying the $5,000. He testified that John Samson had rendered no legal service for him as trustee or in his individual capacity, but that the sole claim for reimbursement was due to services allegedly rendered for August Lienemann. At the time of the payment of the $5,000, August Lienemann was deceased; and his estate had been fully administered and the time for filing claims had presumably expired. The court held that the advance of $5,000 was of substantial value to the partition estate and therefore Frank was entitled to reimbursement. To what extent or how this enhanced the sale is not clear from the testimony. The burden of proving such fact is on the party asserting it, Frank Lienemann. There is no evidence to suggest what the

services were and how they contributed to the value of the estate. We conclude that the court was in error and that the burden of proving the matter had not been met.

Apart from the already disposed of dispute with respect to the termination of the trust, we are unable to conclude on what basis the trial court determined that an adequate fee should not be provided for the plaintiffs' attorney. Substantial offers and counter-offers were made with respect to negotiations for, and purchase of, shares of the various heirs, none of which met with success. The right of plaintiffs-appellants to commence an action in partition is not questioned. They have no complaint. On what basis the trial court concluded that it knew what was in the best interests of all the parties to the partition action rather than the attorney for the plaintiffs and the parties themselves is not clear. No reason exists for the failure to grant an adequate attorney's fee.

We also cannot find any reason to condemn the agreement by Dixon Adams, counsel for the plaintiffs-appellants, and Jeffrey Farnham, counsel for defendant-appellant Herman, concerning a division of a prospective fee in partition when the same appears to have been disclosed fully to the parties and was dependent on court approval. The purpose of the agreement was a compromise so that the plaintiff-appellee George would not require a separate expenditure of fees in order to protect his interests.

The agreement had a statutory basis. Section 25-21,108, R. R. S. 1943, provides for a division of attorney's fees in a partition action: "If the shares confirmed by such judgment and the existence of all encumbrances of which the plaintiff had actual or constructive notice were accurately pleaded in the original petition of the plaintiff, such fees for the attorney shall be awarded entirely to the attorney for the plaintiff; otherwise, the court shall order such fees

for the attorneys to be divided among such of the attorneys of record in the proceedings as shall have filed pleadings upon which any of the findings in the judgment of partition are based.'' The evidence shows the amended petition formed the basis of the partition order. The amended petition was the result of negotiations between Dixon Adams and Jeffrey Farnham and reflected the decision of all the Lienemann parties to proceed with partition. Jeffrey Farnham in this way made a contribution to the partition order. The agreement was no more than Adams' recognition of Farnham's claim and a stipulation that Adams had no objections to Farnham's receiving 30 percent of court-awarded attorney's fees. The share Farnham would receive remained in the discretion of the trial court.

The evidence further shows that Frank Lienemann's attorney, Dixon Adams, performed all the services for the referee, and the pleadings established the shares. Valuable service was also rendered by Jeffrey Farnham, the attorney for Herman Lienemann, especially with respect to correcting the description of the land and securing adequate surveys by which the amount of the acreage ultimately subject to partition was materially enhanced.

Therefore, the judgment of the District Court is modified as follows: The plaintiffs' attorney Dixon Adams shall receive a fee of $22,500 for his services in the District Court and in this court, and the referee's fee shall be reduced to $11,250. The claim of Frank Lienemann for reimbursement for sums paid to John Samson is denied as is the claim of George Lienemann for reimbursement for improvements made on the premises during his occupancy as a tenant. The request for an accounting by the trustee for allegedly unpaid rent due and owing by Frank and George Lienemann is likewise denied. The judgment is reversed and the cause remanded

with directions to enter orders in conformity here-with.

REVERSED AND REMANDED WITH DIRECTIONS.